IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-02099-WYD-MEH

KARA HUGHES,

     Plaintiff,

v.

TITAN TECHNOLOGY PARTNERS, LIMITED,

     Defendant.

---

**ORDER**

---

THIS MATTER comes before the Court on Defendant's Motion for Summary Judgment (docket #37), filed August 17, 2009.  Plaintiff Kara Hughes ("Ms. Hughes") filed a response to the motion, and Defendant Titan ("Titan") filed a reply in support of its motion.  I first address the background of the case and then state my rulings on the motion.

I.    INTRODUCTION AND BACKGROUND

This case arises out of Ms. Hughes' employment with Titan.  Titan hired Ms. Hughes to work as an Organizational Change Management Marketing Director on December 14, 2007.  (December 14, 2007 offer letter to Plaintiff from Defendant.)  Ms. Hughes alleges that she left her employment at Fujitsu Consulting when she accepted Titan's employment offer.  According to the Complaint, Ms. Hughes was hired to report to Karmen Berentsen, Titan's Senior Vice President of Sales, in Titan's Centennial, Colorado office.  Ms. Hughes began working for Titan on January 3, 2008.

Ms. Berentsen left her employment with Titan shortly after Ms. Hughes began her employment.  Ms. Hughes was then notified that she would be reporting to David Pendergast, Vice-President of Marketing, at Titan's corporate headquarters in North Carolina.   On January 22, 2008, Ms. Hughes testified that she talked to Mr. Pendergast about potentially relocating to North Carolina in six to eight months.  Ms. Hughes told Mr. Pendergast that she preferred to work out of Denver and travel to North Carolina when necessary.  Mr. Pendergast told Ms. Hughes that he would discuss her proposal with Titan employees, Elizabeth Schriefer and Vincent D'Ozario.   According to Ms. Hughes, on January 23, 2008, she received an e-mail from Ms. Schriefer, which stated that Ms. Schriefer, Mr. Pendergast and Mr. D'Ozario agreed that Ms. Hughes could work out of Denver and travel to North Carolina when necessary.  However, this e-mail was never found or produced.  Ms. Schriefer testified that she did not recall sending the e-mail.  Ms. Hughes also testified that Ms. Schriefer never claimed to have the power to make employment hiring, retention, or termination decisions.  Titan terminated Ms. Hughes' employment on January 23, 2008 due to downsizing.

It is undisputed that Ms. Hughes' only reliance on the January 23, 2008 e-mail is that she signed a new one-year apartment lease.  At the time, Ms. Hughes was going through a divorce and was moving out of her house.  Ms. Hughes started looking for an apartment to lease in November and December of 2007.  Ms. Hughes testified that she did not sign the lease prior to the day she received the e-mail from Ms. Schriefer because the apartment was not available.

At her deposition and in her discovery responses, Ms. Hughes admitted she was

an at-will employee of Titan.  Ms. Hughes testified that she read Titan's employee handbook section on at-will employment and understood it to mean "[t]hat I, as the employee, can terminate my employment with the company at any given time for no particular reason, and at the same time, the company, the employer, can terminate me for no particular reason at any point in time."  (Hughes Dep. 65:24-66:5.)  Ms. Hughes also testified that Titan promised her a place to earn a salary with a bonus structure, an opportunity for advancement within the company, and that she could work in Denver.  Ms. Hughes relied on both the December 14, 2007 offer letter from Titan and an email dated January 23, 2008 as support for the alleged promises Titan made to her.

The December 14, 2007 offer letter provided "general information regarding your [Ms. Hughes'] initial responsibilities, compensation, and benefits."  (December 14, 2007 offer letter at 1.)  It is undisputed that the offer letter did not specify any length of employment.  The offer letter did, however, include statements regarding professional development and bonus information.  During the discovery phase of this case, Ms. Hughes admitted that no one at Titan ever promised her a specific period of employment.  Additionally, no one ever told Ms. Hughes that she was not an at-will employee.

On September 8, 2008, Ms. Hughes filed the instant action alleging claims for (1) breach of contract; (2) promissory estoppel; (3) fraudulent misrepresentation; and (4) negligent misrepresentation.

II.     MOTION FOR SUMMARY JUDGMENT

    A.     Standard of Review

    Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

    In the Tenth Circuit, evidence considered by the court in ruling on a motion for summary judgment must be evidence that is admissible at trial. "It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment." *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir. 1995). "Hearsay testimony cannot be considered because "[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." *Id.* (internal citations omitted). Further, under Rule 56(e), evidence offered in opposition to a motion for summary judgment must be "'made on personal knowledge . . . set forth

-4-

such facts as would be admissible in evidence, and . . . show affirmatively that the witness is competent to testify to the matters' set forth therein." *Id.*

    1.    <u>Whether Summary Judgment is Proper on Plaintiff's Breach of Contract and Promissory Estoppel Claims</u>

I first address Titan's assertion that summary judgment should be entered on both Ms. Hughes' claims for breach of contract and promissory estoppel.  Titan contends that  "because Ms. Hughes was an at-will employee, Titan was free to terminate her employment at anytime."  (Mot. Summ. J. at 8.)  Titan further states that Ms. Hughes bases her entire breach of contract and promissory estoppel claims on alleged promises that were either too vague or indefinite to create an enforceable contract for something other than at-will employment.  Specifically, Titan argues that the December 14, 2007 offer letter merely contained salary and benefits information and vague statements regarding a "continuous opportunity in terms of leadership and professional growth."  (Mot. Summ. J. at 8.)  Titan also argues that the January 23, 2008 e-mail contained no statements regarding length of employment.  The alleged e-mail only indicated that Ms. Hughes did not have to re-locate to North Carolina.

In support of its argument, Titan submits the deposition of Ms. Hughes, where she testified that she was an at-will employee.  (Hughes Dep. 65:21-23.)  Ms. Hughes further testified that she read Titan's employee handbook section on at-will employment and understood it to mean "[t]hat I [Ms. Hughes], as the employee can terminate my employment with the company at any given time for no particular reason, and at the same time, the company, the employer, can terminate me for no particular reason at any given time."  (Hughes Dep. 65:19-66:5.)  Ms. Hughes also stated that no one at

Titan mentioned anything to her about changing her employment status from at-will employment.  (Hughes Dep. 66:14-17.)

The Tenth Circuit has held that, "[a]n employee who is hired in Colorado for an indefinite period is an 'at will employee' whose employment may be terminated by either party without cause or notice, and whose termination of employment does not give rise to a cause of action."  *Orback v. Hewlett-Packard Co.*, 97 F.3d 429, 432 (10th Cir. 1996) (citing *Continental Airlines v. Keenan*, 731 P.2d 708,711(Colo. 1987)).  However, this presumption of at-will employment is not absolute and can be rebutted under certain circumstances.  *Schur v. Storage Technology Corp.*, 878 P.2d 51, 53 (Colo. App. 1994). It is the employee's burden, however, to demonstrate circumstances that would authorize application of an exception to the general rule.  *Id.* at 53.  An employee may rebut the presumption of at-will employment by proving that "an explicit term of the employment contract restricts the employer's right to discharge (such as an undertaking to discharge only for cause), or that an employer's policy statement restricting such right has been properly accepted as part of that contract or relied upon by the employee under circumstances giving rise to promissory estoppel."  *Id.*  However, absent "special consideration" or "an express stipulation as to the duration of employment, a contract for permanent employment is no more than an indefinite, general hiring terminable at the will of either party."  *Id.*

Alternatively, even if an enforceable contract does not exist, an employee may bring a promissory estoppel claim if he or she can demonstrate a promise that the employer should reasonably have expected the employee to consider as a commitment,

reasonable reliance on the promise to the employee's detriment, and that injustice can be avoided only by enforcement of the promise. *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987). "Unless this preliminary factual showing is sufficient to overcome the presumption of an employment terminable at the will of either party, the employee's cause of action should fail." *Id.*

"The burden of showing that no genuine issue of material fact exists is borne by the moving party. *EEOC v. Horizon/CMS Healthcare*, 220 F.3d 1184, 1190 (10th Cir. 2000). The movant need not show an absence of issues of material fact in order to be awarded summary judgment, nor must it negate the non-movant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, it must only allege an absence of evidence to support the opposing party's case and identify supporting portions of the record. *Id.* at 323. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Id.* at 322-23, 325. "The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; see Fed. R. Civ. P. 56(e).

In her response to the motion for summary judgment, Ms. Hughes admits that she was an at-will employee of Titan. However, Ms. Hughes argues that the December 14, 2007 offer letter constituted an implied-contract exception to the employment at-will doctrine. Ms. Hughes claims that the offer letter contained promises of career growth within the company, room for advancement, and a bonus structure. Ms. Hughes further argues that Titan employees made statements to her that led her to believe that she

-7-

would be at Titan "for more than three weeks . . . ." (Hughes Dep. 99:17-23.)  In support

of her contentions, Ms. Hughes puts forth evidence of statements made to her during

the recruiting process where Titan employees promised her "a professional place . . . to

grow, including but not limited to, a 401(k) Savings Plan, paid vacations, bonuses, and

full insurance benefits." (Resp. at 11.)  Ms. Hughes also puts forth evidence of the

January 23, 2008 e-mail allegedly sent by Ms. Shriefer, which stated that Ms. Hughes

could stay in Denver and travel to North Carolina when necessary.  Ms. Hughes testified

that after receiving the e-mail confirmation that she would be able to stay in Denver, she

executed a one-year lease on an apartment.  Finally, Ms. Hughes states that this

evidence creates triable issues of fact with respect to her breach of contract and

promissory estoppel claims.

     Turning to my analysis, it is undisputed that Ms. Hughes was an at-will employee

of Titan.  Accordingly, Titan was free to terminate Ms. Hughes' employment without

cause or notice.  Thus, it is Ms. Hughes' burden to demonstrate circumstances that

would authorize application of an exception to the general at-will employment rule.  After

carefully reviewing the evidence submitted by the Plaintiff, I do not find that Ms. Hughes

has proved that Titan made a sufficiently definite or "express stipulation as to the

duration of employment . . . ." *Schur*, 878 P.3d at 53.

     First, I find that the December 14, 2007 offer letter did not contain any statements

setting forth a specific time period of Ms. Hughes' employment.  Also, the letter is silent

as to either party's obligations upon termination of the employment relationship.

Instead, the offer letter contains statements about career advancement, development

with the company, salary, and bonus information.  This Court along with Colorado state courts have consistently held that vague and indefinite statements made by an employer to a prospective or present employee do not rebut the presumption of at-will employment.  "[T]he statement must either disclose a promissory intent or be one that the employee could reasonably conclude constituted a commitment by the employer.  If the statement is merely a description of the employer's present policies or a forecast of the employee's likely career progression, it is neither a promise nor a statement that could reasonably be relied upon as a commitment."  *Soderlun v. Public Service Corp.*, 944 P.2d 616, 620 (Colo. App. 1997); *see Snoey v. Advanced Forming Technology, Inc.*, 844 F. Supp. 1394, 1398 (D. Colo. 1994) (holding that employer's letter outlining the terms of employment that covered "areas as salary, bonuses, relocation arrangements, and other benefits" is insufficient to rebut the presumption of at-will employment).

Second, I disagree with Ms. Hughes' claim that verbal representations made by Titan employees during both the recruitment process and once she was hired constitute either a long-term employment contract or enforceable promises of a definite term of employment.  Ms. Hughes relies on *Pickell v. Arizona Components Co.*, 931 P.2d 184, 185 (Colo. 1997) to support her claims.  In *Pickell*, however, the Colorado Supreme Court never addressed the issue of whether the employer's statements were sufficient to rebut the presumption of at-will employment because it was improperly appealed.  Thus, I am not persuaded by *Pickell*.  Instead, I note that the Colorado Supreme Court has held, after *Pickell*, that statements describing an "employer's present policies or a

forecast of the employee's likely career progression" are too indefinite to be reasonably relied upon as offers or promises of employment for a specific term. *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 247 (Colo. 2006.); *see Soderlun*, 944 P.2d at 620.

Ms. Hughes' testimony that she relied on Titan's statements and believed that she would be employed for "more than three weeks" is similarly unpersuasive.  This Court has held that "[a] hope, or expectation, or anticipation that [employment] will be long-term, or is an opportunity for four or five years is not enough to establish a contract for a fixed term of employment."  *Snoey*, 844 F. Supp. at 1398-99 (internal quotations omitted).

Finally, I find that the January 23, 2008 e-mail is insufficient to rebut the presumption of at-will employment.  Even if the e-mail exists, which is in question, it does not refer to a specific term of employment.  The alleged e-mail merely suggests that Ms. Hughes will not be re-located to North Carolina.  Similar to the statements made to Ms. Hughes during the recruiting phase of her employment, I find that this e-mail is too ambiguous or indefinite to be considered an enforceable promise or an offer of employment for a specific term.  Despite the fact that the December 14, 2007 offer letter contained no specific term of employment and the employee handbook clearly indicated an at-will relationship, Ms. Hughes accepted employment with Titan.  Ms. Hughes even acknowledged that she was an at-will employee.  Thus, I find that Ms. Hughes alleged reliance on Titan's verbal representations, statements contained in the offer letter, and the January 23, 2008 e-mail cannot be considered reasonable.

In conclusion, I find that Titan has demonstrated an absence of evidence to

support Ms. Hughes' claims for relief for breach of contract and promissory estoppel, and that Ms. Hughes has failed to meet her burden of demonstrating the existence of "specific facts showing that there is a genuine issue for trial."  Therefore, Titan is entitled to summary judgment in its favor as to these claims.

        2.      <u>Whether Summary Judgment is Proper on Plaintiff's Fraudulent Misrepresentation and Negligent Representation Claims</u>

I now turn to Titan's assertion that Ms. Hughes' claims for Fraudulent Misrepresentation and Negligent Misrepresentation should be dismissed as a matter of law.  To establish a claim for negligent misrepresentation under Colorado law, a plaintiff must show: "(1) a fraudulent misrepresentation of a material fact was made by the defendant; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff has the right to rely on, or was justified in relying on, the misrepresentation; and (4) the reliance resulted in damages."  *Balkind v. Telluride Mountain Title Co.*, 8 P.3d 581, 587 (Colo. App. 2000).  "Negligent misrepresentation also requires justifiable reliance by the plaintiff."  *Id.*

Turning to the case at hand, Ms. Hughes asserts that her misrepresentation claims are based on the representations made to her by Titan during both the recruiting process and in the January 23, 2008 e-mail.  Ms. Hughes first argues that she relied on Titan's representations during the recruitment process when she resigned her employment position with Fujitsu.  Ms. Hughes contends that she suffered damages when she was terminated from her employment with Titan three weeks later.  Ms. Hughes relies on *Berger v. Security Pacific Sys., Inc.,* 759 P.2d 1380, 1384 (Colo. App. 1990) in support of her argument that Titan had a duty to disclose to her a possible

decision to downsize, which would put her job at risk.

In *Berger*, the Colorado Court of Appeals held that

> [a] prospective employer may not have a duty to disclose its financial condition to every job applicant it interviews. However, if . . . its representations concerning its own financial prospects and the applicant's future employment prospects reasonably induce a false impression as to those material factors in the mind of the interviewee, a duty of full disclosure arises.

*Id*. at 1384.  In *Berger*, the prospective employee specifically asked the employer questions about the financial condition of the employer.  The *Berger* Court concluded that the employer's responses could have reasonably created a false impression.

In the motion for summary judgment, Titan argues that it did not breach any duty of disclosure allegedly owed to Ms. Hughes.  Titan argues that unlike *Berger*, there is no evidence in the record that Ms. Hughes asked any questions about the financial condition of Titan.  Further, there is no evidence that Titan or Ms. Berentsen, the Titan employee who recruited Ms. Hughes, made any affirmative representations about Titan's financial condition.  I agree.  *Berger* is inapposite to the facts of this case.  As I previously discussed, the statements made to Ms. Hughes during the recruiting process consisted of general statements that referred to Ms. Hughes' growth within the company, job progression, and bonus and salary information.  The only evidence presented with respect to Titan's financial condition was the testimony of Titan's Rule 30(b)(6) witness, Bryant Gregory.

At his deposition, Mr. Gregory testified that Titan made the decision to downsize in late December 2007 or early January 2008.  (Gregory Dep. 58:1-9.)  Mr. Gregory

further testified that Ms. Hughes' employment was terminated due to a "ripple effect" of the resignation of her supervisor, Ms. Berentsen.  (Gregory Dep. 26:2-3.)  "Ms. Hughes was brought in to be a marketing assistant specifically for Ms. Berentsen."  (Gregory Dep. 26:3-5.)  "We had a situation with Karmen Berentsen's resignation, and now we have a marketing person [Hughes] that's basically stranded because the individual they were going to report to [Berentsen] was no longer employed" at Titan.  (Gregory Dep. 32:17-20.)  Mr. Gregory testified that Titan's marketing department was consolidated "out of corporate in Charlotte, North Carolina."  (Gregory Dep. 26:7-8.)  Mr. Gregory also testified that the decision to terminate Ms. Hughes' employment was made in late January of 2008.

Ms. Hughes has put forth no evidence to support her allegation that Titan failed to disclose the risk of down-sizing to her while she was being recruited for employment. Mr. Gregory testified that the events surrounding the resignation of Ms. Berentsen, that ultimately led to the termination of Ms. Hughes' employment, occurred after Ms. Hughes began her employment on January 3, 2008.  Thus, I find that Titan could not have had a duty to disclose such information to Ms. Hughes during her recruitment or employment interview.  Based on my careful review of the evidence submitted in this case, I find that Ms. Hughes has failed to designate specific facts showing that there is a genuine issue for trial with respect to her argument that Titan made misrepresentations of a material fact during the recruitment process.

I now turn to Ms. Hughes' claim that Titan made misrepresentations in the January 23, 2008 e-mail.  Ms. Hughes again argues that she relied on the statements

made in the January 23, 2008 e-mail as an indication that her employment would continue in the future.  She also claims that after receipt of the e-mail she executed a one-year lease on an apartment.  However, as I previously determined in this Order, Ms. Hughes' reliance on the e-mail was not reasonable.  The e-mail did not promise a specific period of employment.  The e-mail merely suggested that Ms. Hughes will not be re-located to North Carolina.  Thus, I find that Ms. Hughes alleged reliance on the January 23, 2008 e-mail cannot be considered reasonable.

After carefully reviewing the evidence submitted in this case, I find that Titan has demonstrated an absence of evidence to support the elements of Ms. Hughes' claims for relief for fraudulent and negligent misrepresentation.  Moreover, I find that Ms. Hughes has failed to meet her burden of demonstrating the existence of "specific facts showing that there is a genuine issue for trial."  Therefore, Titan is entitled to summary judgment in its favor as to these claims.

III.   CONCLUSION

For the reasons set forth herein, it is hereby

ORDERED that Defendant's Motion for Summary Judgment (docket #37), filed August 17, 2009 is **GRANTED**.  Defendant is entitled to summary judgment in its favor as to all of Plaintiff's claims.  Accordingly, this matter is **DISMISSED** in its entirety.  It is

FURTHER ORDERED that the trial set for Monday, March 22, 2010 and the final trial preparation conference set for Tuesday, March 9, 2010 are hereby **VACATED**.

Dated:  December 23, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge